Okay, Ms. Hernandez, would you like to reserve some time for rebuttal? Yes, Your Honor. I'd like three minutes reserved. Three minutes, okay. Go ahead, please. Good morning, Your Honors, and may it please the Court. As an initial matter, I'd like to clarify that Appellant's opening brief at page 33 references Trustees' paragraph 11. That is a reference to paragraph 11 of the Trustees' Objection to Confirmation of Plan at ECF 26, Appendix 7, which objects to the initial plan for not providing a deadline for sale of Appellant's homestead. That shortcoming was easily corrected in a proposed First Amendment plan, as were other perceived shortcomings. Today, I'd like to highlight four interrelated reasons why the Court should reverse the dismissal and remand the case with instructions to allow Appellant to file his First Amendment, Chapter 13 plan to cure any default in payment of the 2015 foreclosure judgment by sale of his homestead within a reasonable time. First point, the Bankruptcy Court applied the wrong legal standard to the initial plan and what Appellant offered to propose as a First Amendment plan when it concluded that Appellant was acting in bad faith by seeking to modify the claim's secured indebtedness. Appellant was proposing to cure any default by payment in full of the 2015 judgment by sale of his homestead. The Bankruptcy Court treated the intended sale of Appellant's homestead as a modification of the claimed debt obligation under 1322b-2 when Appellant was proposing a cure by sale under 1322b-3. Sale was the only means of payment available to him because the debt was already reduced at judgment. No modification... Counsel, I have a question, and that is, you proposed a sale, but you didn't propose to pay. Correct? No, that's not correct. Well, you proposed that you were going to withhold the money until such time as you were determined that you had an obligation to pay, and you contested that obligation to pay from the outset of the case, and you continued it through this appeal, haven't you? We're not contesting the obligation, Your Honor. We're trying to determine who the proper holder of that obligation is. Hasn't that already been determined in State and Federal court in prior proceedings? No, Your Honor. Well, the debtors litigated in Federal court, and it went to the Ninth Circuit, and it was determined that this obligation was owed, and the party that it was owed to is the party that's proceeding in this matter, and it was also litigated in the State court, and the court allowed a foreclosure to be proceeding, and it did proceed, I think, a couple of years before this case was filed, and the debtor's wife filed a bankruptcy case before that, and it didn't proceed. And then in subsequent cases, this debtor's filed this case, and again, the foreclosure order was entered by the State court, appealed by the debtors, and the denial was affirmed by the Court of Appeals, and the Supreme Court denied review. So why are we still fighting about who gets paid, except that the debtors choose to do that? The judgment creditor is not the creditor in this Chapter 13 filing. It's not the same entity. The judgment was in favor of the trustee, Deutsche Bank National Trust Company, is the judgment creditor. But what we have here in this case is the creditor who filed POC 4-1 is an unincorporated association of holders of registered certificates, none of which are identified, and under the remit trust agreement with the SEC, do not have recourse against the debtor's homestead. This is the creditor that we're talking about here. They are not entitled to POC to a claim because they're not the judgment holder. Judgments are assignable, right? There is no proof of assignment. And the issue is the note is a forgery, and that was determined in that case that got removed to federal court. It was proven that the signer on that note did not sign it and did not authorize it to be signed. But that's already been adjudicated, hasn't it, the forgery issue? Because there's a judgment on the debt. There is a judgment on the debt, but the trustee is Deutsche Bank National Trust Company. But now I'm focusing on your argument that the note was forged. The argument that the note was forged, I think, has to be precluded by a judgment on the note, right? If I said the note was forged, I meant the assignment, I believe it was. But there was a forgery, and that's what this creditor in this 13 case is trying to do with his POC 4-1 claim. Can I ask a different question? So this case was dismissed, right, and there was no state pending appeal? This case? I'm sorry. The debtor's case. The debtor's bankruptcy case was dismissed. That's why we're here. You're appealing the dismissal. There was no state pending appeal? There is a state case pending, but that is— I guess let me get to the point. Did the foreclosure sale happen? It happened last October after the dismissal of this case, and that confirmation of sale is on appeal right now with the Court of Appeals. So, counsel, let's get to the bad faith. Yes, sir. I would like to get to the bad faith. Let's see. What I'm concerned about is that the court applied factors that it determined, and one of the factors or some of the factors that it looked to were the prior dismissals and the prior filings. Then it said that it looked at the Ellsworth and Levitt factors. Is that not the correct standard the court should have applied? The court relied heavily on a declaration from a staff attorney with the trustee's office, and it mischaracterized. There were errors and omissions in that declaration, and at the hearing on the motion to dismiss, the court totally relied on it, on that declaration. For instance, in one dismissal, it's silent on why it was dismissed, but the omission is that it was actually the trustee who caused the dismissal of debtor's spouse's petition. These things keep happening. It was case number 12169 where the trustee failed to respond to the debtor's spouse's to reschedule the 341 meeting in order to comply with the judge's order that the meeting be rescheduled in order for her to obtain an extension of time to file her scheduled statements and plans. She'd been communicating apparently with the trustee to get those people who helped file this paperwork, and she couldn't find any, and the trustee's office was unresponsive, and that's why she needed extra time to find somebody to help her, to assist with preparing the documents. And when finally the judge said, okay, you have to reschedule the meeting, the 341 meeting, and the trustee ignored every one of her emails, her urgent requests. She called, she emailed, please reschedule, and that's the only reason why that case was dismissed. That's a pretty good reason. I mean, the trustee doesn't have an obligation to reschedule any meeting of creditors. It's the debtor's obligation to show up. The judge, if the judge says you'll get an extension but reschedule the meeting, then how can the creditor reschedule the meeting? I'm not following the argument. The point is that even if there was one mistake in this entire lengthy affidavit, most of those dismissals were all of public record, and most of the things that he relied on were all matters that he could rely on by judicial notice. So I don't understand how this argument works that there was a mistake. Okay, a mistake. He had numerous prior filings. These people have been fighting for more than 10 years to prevent foreclosure of their home, despite the fact that there's been a termination by state and federal courts that the debt is legitimate. They have been in and out of court numerous times. That's not in dispute, right? That's one of the main levit factors is how many times the case has been previously filed by debtors. Correct? That's correct. That's correct. But we also have in this particular case that we're appealing is the denial of due process. What happened in this case, he did not have a fair chance to present, to defend. He is willing to sell the house and pay the debt. He's willing to do that, but he was denied this when what happened at that motion to dismiss and the objection to the plan, he showed up four minutes late, and they discussed the new filing, the POC 4-1 from this creditor that he had not received yet. And the attorney, there's the bad faith. The attorney filed it two days before the hearing on the motion to dismiss, and he knew, the attorney knew it would not reach Mr. Erickson before the hearing, and it was discussed before he arrived at the hearing. He was four minutes late, and he was not aware that it was discussed. But this was new evidence, and he had no opportunity to do that. Also, the conclusions by the bankruptcy judge that when he filed, when he found that there was prejudicial delay to the creditors with what the judge was perceiving as a modification plan, and it was not a modification, it was a cure, cure by sale. Let me ask you this. If the debtor is really willing to sell the property and pay off the debt, why does he need a Chapter 13? Why not just do a Chapter 7, let the trustees sell the property, take a discharge? Why not even just let a foreclosure sale happen? That way there's no danger that the wrong creditor gets paid because it's going to be on the responsibility of a court. Let me just finish. One more part of my question is why is it inappropriate to draw the inference that the debtor doesn't really want to sell the property. He wants to live there another year for free. There is sufficient, or at the time of the filing of the Chapter 13 petition, there was sufficient equity in the property to cover the judgment and post-judgment costs and expenses, interests and expenses. So that's what they were trying to say. It could have been substantial. And that's why they wanted to sell it under the Chapter 13 protection. But when your question about why not just convert to a 7, he can't convert to a 7 because the judge, the bankruptcy judge, imposed the two-year filing bar. So he can't convert. And that's one of the reasons that we're asking is either at least go back and allow a 7, permit there is sufficient equity, and if he can go back and sell the property under the Chapter 13 protection within the limits of the Washington non-bankruptcy laws applicable for a foreclosure sale. So that's what he's trying to do. There is equity if you do the right. So he's stuck. He can't refile for two years. Okay. I've taken you inside your three minutes. So if you want to reserve the rest of your time, you can do that. But if you want to finish, go ahead, please. I'll reserve. I'll save my time. Okay. Thank you. Ms. Park. Good morning, Your Honors. May it please the Court, my name is Anna Park, and I represent the appellee in this case, Jason Wilson Aguilar, the Chapter 13 trustee. The issues presented on our end are going to relate primarily to whether the bankruptcy court committed clear error or abused its discretion in dismissing Mr. Erickson's case and barring him from refiling bankruptcy for a period of two years, and also whether the bankruptcy court abused its discretion in denying the debtor's motion for reconsideration that were filed by Mr. Erickson. The standard of review relates to whether there was a clear error or abuse of discretion on the part of the bankruptcy court. As a side note, the trustee's office should have included the reference to the United States versus Hinkson case in our briefing, and that was an oversight on our end, and I do apologize for that. But that did include the two-part inquiry as to determine whether the bankruptcy court abused its discretion. But the facts are very important in this case, and I believe that the facts in this case ultimately resulted in the bankruptcy court's decision to dismiss Mr. Erickson's Chapter 13 bankruptcy case and to bar Mr. Erickson from refiling bankruptcy for a period of two years. The first point I want to make is that this is not Mr. Erickson's first Chapter 13 bankruptcy case. Between Mr. Erickson and his spouse, there have been six reorganization attempts since 2018. Mr. Erickson has filed four cases, including the current case that he is appealing, and his spouse, Ms. Erickson, filed two reorganization cases as well. All of the reorganization attempts did not result in plain confirmation. The bankruptcy filings appear in large part to be filed in relation to an attempt to delay the foreclosure attempts by the secured mortgage lender relating to the real property at 5421 Pearl Avenue Southeast in Auburn, Washington. Mr. Erickson is not new to the Chapter 13 bankruptcy system. Given his multiple filings and the filings by his spouse, Mr. Erickson is likely not unfamiliar with the requirements of the Chapter 13 reorganization, including the requirements that are needed for plan confirmation. Given the multiple filings, Mr. Erickson should have proposed a feasible and confirmable plan from the onset or attempted to correct the issues in his only plan that he filed in this case in order to rectify or remedy the issues raised by both the secured mortgage lender and their objection to confirmation, and also the Chapter 13 trustee's objection to confirmation. The second point I wanted to make is that Mr. Erickson did receive proper notice of the Chapter 13 trustee's motion to dismiss and request to bar the debtor from refiling. The Chapter 13 trustee actually requested a four-year bar from refiling in our motion to dismiss, which was filed on June 28, 2022. That motion was served on Mr. Erickson on June 29, 2022, and so this does fall within the 21-day notice requirement under Federal Rural Bankruptcy Procedure 2002, subsection A. So Mr. Erickson did receive notice of that motion to dismiss. In addition, 11 U.S.C. Section 1307C does allow the bankruptcy court to dismiss a case for cause. Cause may include, among other things, unreasonableness laid by the debtor that is prejudicial to creditors. The decision to dismiss a Chapter 13 case under 11 U.S.C. Section 1307C, I believe, is a discretionary decision of the court. And so based on the above, the trustee timely filed, served, and noted a motion to dismiss and requested that Mr. Erickson be barred from refiling for four years. Mr. Erickson had sufficient notice of the possible relief that the trustee was requesting, I'm sorry, that the trustee was seeking, and that ultimately could be granted by the court at the July 20, 2022 motion calendar hearing. Mr. Erickson was made- Let me ask you, let me ask you. Suppose there had been a plan that was proposed right up front by this debtor that had in it the cure idea that Ms. Hernandez had talked about. Will cure the default by selling the property off in, I forget what the time period was, a year or so, and paying it in full a date before the statutory redemption period under state law. Would that be an appropriate cure and maintenance plan in Chapter 13? Well, I guess it would depend on what the debtor is trying to do in terms of whether he's going to pay the ongoing mortgage while he's attempting to sell, or if he's just primarily including a Section 10 provision that indicates that he's going to sell within a period of time. Obviously- I think he proposed no payments in the meantime. Oh, okay. I'm sorry. I missed that. I apologize. So if a plan was proposed that stated that, I would be very surprised if the mortgage lender didn't object. But I believe the distinction from what you just stated, which is within a year of filing or within a year of the petition filing, I believe that's what you said, is different from what the debtor's plan proposed, which basically did not have any time limitation for a sale, which would mean that the debtor would essentially have until the end of the 60 months to be able to complete the sale. I'm sorry, did I answer your question? I think so. Okay. Well, another question I'm wondering about is what about the requirement of equal monthly payments? On the part of the trustee or the mortgage creditor? Either one. Okay. I would be very surprised if a mortgage creditor didn't raise that objection to confirmation because it happens very frequently. The trustee's office, I would say, it's all on a case-by-case basis. So we would look at each particular case to see, do they have the income to be able to fund this? Do they have the ability to pay anything? If they did have the ability to pay something, then we might raise that they have the ability to make those equal periodic payments or to make a monthly payment. Some debtors propose less than the ongoing mortgage payment while they're trying to sell the property in order to appease the mortgage lender. I think those are all distinctions from the current case in which the debtor proposed a plan payment of $221.79 a month and really had no deadline other than 60 months to sell this property, of which he listed in Section 4C1, disputed C Schedule D in both Section 4C1 for the ongoing and ACURE payments. So did that answer your question or would you like me to? It did. Thank you. Thank you. So, sorry, I lost my place. But basically, the debtor, Mr. Erickson, was aware of the relief that the trustee was seeking in the motion to dismiss with a bar and that it could ultimately be granted at the July 20, 2022 motion calendar hearing. Mr. Erickson was made also aware of the trustee's assertion that he filed his current case and plan in bad faith. In addition, the court had the discretion to dismiss the case pursuant to 11 U.S.C. Section 1307C, and Mr. Erickson was given sufficient notice of the possibility that his case could be dismissed and that he could be barred from refiling, which potentially should have given him incentive to get another amended plan proposed and on the docket that addressed the objections raised by both the mortgage creditor and the trustee. And just to segue into my last point about that, Mr. Erickson filed his Chapter 13 case on May 12, 2022, but didn't file his Chapter 13 plan until June 6, 2022, which is 25 days after the case was filed. Now, there was, in his defense, there was an extension granted by the court allowing him to file it by June 6, but given his multiple case filings by both Mr. Erickson and his spouse that dealt with very similar issues each time in terms of disputing the mortgage and payment of the mortgage, it does seem that by this point in time, given that we were on case 6 since 2018, there should have been a proposed plan that addressed these issues in a better way than what the debtor did in this current case. On June 9, or I'm sorry, just to go back a little bit as well, that the debtor should have been prepared to file an amended plan that was feasible and confirmable, not to file a plan that was very similar to what was filed in the prior cases that had drawn objections from both the mortgage lender and the trustee on numerous occasions in the prior cases. On June 9, 2022, the secured creditor Deutsche Bank filed an objection to the debtor's plan. The objection itself did reference the outstanding balances due, which was a little over $1.4 million, the prepetition of rearage, and the ongoing mortgage amount. The secured creditor served that objection on the debtor on June 9, 2022. Although that mortgage creditor did not file their claim until July 18, 2022, the creditor had filed some documentation on the court, sorry, on the docket, i.e., their objection to confirmation that would have given the debtor notice about the amounts that were being asserted by that creditor, absent a claim being filed. But I also want to point out that the claim bar deadline was July 21, 2022, so they were filing their claim within the timely deadlines that the court gave creditors to do so. On June 28, 2022, the trustee filed our objection to confirmation and filed the motion to dismiss with a request to bar the debtor from refiling for four years. And the trustee raised a number of issues, not just relating to plan issues, but there were a number of plan issues raised in our objection as well. Mr. Erickson had the opportunity to remedy these issues and address the issues raised by either the mortgage creditor or the trustee prior to the July 20, 2022 hearing. Based on the lack of action on the part of Mr. Erickson, especially based on the fact that he has been involved in multiple other reorganization attempts, none of which have resulted in plan confirmation, the end result of the bankruptcy court in dismissing the debtor's case and imposing a two-year bar was proper. The bankruptcy court did not abuse its discretion and it did not commit clear error in its ruling. The end result of dismissal was not illogical, implausible, or without support in inferences that may be drawn from the facts in the record, nor was the end result of denying the motion for reconsideration an abuse of discretion and was not an error. The dismissal of the debtor's case with a bar from refiling should be upheld and was proper. And the Chapter 13 trustee would request the court uphold the ruling from the bankruptcy court in relation to the dismissal of Mr. Erickson's case. Thank you. And if you have any questions, please let me know. Any questions for the trustees side? Okay. Thank you very much. Thank you. Hernandez, you've got a couple of minutes, a minute and a half left. Please go ahead. The first key point is that there are no payments to be made. The loan was reduced to a judgment. The only cure available is 100 percent payment, and it's by sale of the property. And that's why there were no payments allocated for the property, because it's in default. It's a judgment. It's 100 percent. And there was equity, but the $221, I believe, did not include the car payment that he was making outside the plan. But he was not the problem. I think we have here just he was curing, and the cure is 100 percent, because it's a judgment. The only option left to him legally is to sell, and that was his proposal. So, yes, so moving on real quick. I have 35 seconds. The notice of the objection, that notice, he did receive notice, but there was nothing about the unreasonable delay prejudicial to creditors. That was not in the objection. That's what we're saying is he did not have an opportunity to address that until after the dismissal. He walked into the hearing and then learned that 1307C1 would be applied. That was new. That was not in the trustee's motion. The trustee didn't urge it. It was sua sponte by the court. So we have the I'm running out of time. Yes, I think we understand your position from your briefs, so thank you for that, and thank you for both sides' good arguments. The matter is submitted. Thank you, Your Honor. Thank you. That's the end of our calendar, so courts in recess. All rise.
judges: Faris, Brand, and Gan